The next argument is in Appeal 1241, Phillips v. Cardiac Science. The opposing counsel is ready, Mr. Tate, so welcome to the court. Good afternoon, please proceed. Good afternoon, and may it please the court. The district court in this case made three significant errors. The first, the court granted a summary dismissal without giving Phillips a notice and opportunity to be heard on its claims. Phillips asked for a claim construction hearing and instead had their case dismissed. That included all the claims that were brought in Phillips' complaint, including the claim for priority, which isn't even addressed in the district court's opinion. The district court's second mistake was in deciding the written description and invalidity of the priority issues in particular. The court did that without a claim construction. Phillips asked to have the claims construed. The court dismissed those claims without construing the claims or the particular term, the key term that was issued here, the impedance compensated defibrillation pulse. And that was really critical to the 112 paragraph 1 issue, which could not be decided without doing that. And third, the district court dismissed on the board's procedural rulings, which were wrong. The board's ruling was wrong and in effect dismissed the case on improper ground. The board's procedural rulings, in fact, didn't even address all the claims in Phillips' complaint. It didn't address priority, which was the subject of a separate board decision and decided on the merits. Can you help me understand what Judge Peckman actually did? For example, was there a motion to dismiss pending before her? There was not. Was there a summary judgment motion pending before her? There was not. But there was another motion pending before her, which was your motion asking for a Markman hearing. That's it. Was that the only motion pending in front of her? That was the only motion. Okay. Now, after denying your motion and rejecting the requested Markman hearing, she dismissed the case. Can you help me understand under what rule of procedure she was implicitly acting in dismissing your entire case? Is this 12B6? Is this Rule 56? Is this Rule 50? What is this? The best I can say is because she did consider materials outside the pleadings that it should be treated as a Rule 56 summary judgment motion. What were the extraneous materials? Well, the parties did submit some of the papers from the board. And as you saw, the appendix is a little hit or miss. I'm not sure every paper that should be in there is because the entire record from the board was never submitted to the district court. But there were things outside the pleadings of the complaint and the answer. So it has to be Rule 56 by operation of case law. I believe it does. Basically, she must have held that on the record before her there was no possible theory upon which you could prevail. It must have been that. It must have been that. And, in fact, there was a summary judgment against us on all of our claims, including the ones that weren't even addressed. And it must have, among other things, she must have held that no matter how you construed the claims, you couldn't prevail. You know, Judge Friedman, I'm not sure she ever reached that point. Because the error here really stems from the board's mistake to start with, which is repeated in the district court's opinion. That's at A5, where she quotes what the board did. And the board, under its own regulation, has a rule that says when you have copied claims or any claims in an interference, they will be interpreted in light of the specification in which they appear. Now, we know from the recent Agilent v. Affymetrix case that that rule does not apply in this situation, where you have copied claims and they're being challenged under 112 paragraph 1. So that error by the board infected the whole proceeding. Really, if you look at it, everything sort of spirals out of that, from that proceeding. Because look at what the board did. The board said, well, you're arguing to have your claims, or the copied claims, construed in light of your specification. That's ours, the Morgan specification. That violates our rule. Therefore, we don't have to construe the claims. Therefore, we deny your motion under 4. So the practical effect is that the regulation on which the board, and ultimately Judge Peckman, relied, is implicitly overruled in part by this court's case law. It is. Spina and Agilent are still— Spina is pretty— Spina is still good law. It's still good law. Yes. With Agilent, Agilent just relied on Spina. And reaffirmed that. Now, there has been a debate in the Patent Office over that, and people have been dealing with this issue for a number of years, of whether or not the board's regulation controls or Spina controls. This issue is not one that has not come up fairly often, where you have copied claims, and they have two different meanings based on whether they're looking at one specification or another. It has come up. And so we're glad that the Agilent case finally has resolved this, and told us that, yes, the Spina rule is still good law. The Patent Office could not administratively set aside that case, even though that was, in effect, what the regulation tried to do. So we have that decision by the board, and then the board's—the administrative patent judge says, well, your argument is contrary to our regulation. Therefore, we don't have to— It's true. That's right. Therefore, we don't have to construe the claims at all. Therefore, you lose on motion number four. And the other motions, like our contingent motion for invalidity, the board says, well, that's contingent on us construing the claims. We didn't have to construe the claims. Therefore, you lose on that motion. Imagine. So everything sort of spiraled out of there. We lost on priority two, and we should have the opportunity to challenge that as well. You know, under these hybrid proceedings, Section 146 actions, we can bring in live testimony. Really, the case should hopefully be decided on the 112 issue. But if it doesn't, we still have that claim as well. So you can see it sort of spiraled out from that erroneous decision that we now have. What's the effective date of the regulation in question? Well, actually, it's changed. There was a pre-1994 regulation. That's 1.633A. That was amended in 1994 to effectively overrule SPINA, and it has been in place in so many words since then. Now, the new current regulation, that's 41.200B, says in so many words the same thing, that any claims are interpreted in light of the specification. When did that newer regulation issue? That has been in the last few years. I'm not sure exactly which year it is. After SPINA, but before Agilent. Yes, and actually the rule 6.33A was also amended after SPINA as well. So it has been carried through in a different number, and it's in slightly different form. But that's been around since 1994. SPINA was in the 1992 case, that's right. Your view is the intent or the effect of the original regulation, or its earliest amendment at least, was to overrule SPINA? Set aside SPINA, yes. Is that a proper thing for the patent office regulations to do, set aside Federal Circuit case law? I think the Agilent case says emphatically that. I don't know. If the board had its free reign, maybe it would have decided to overrule Agilent. If the board has the power to overrule all judicial decisions by regulation, would you overrule any of them? Anything it doesn't like. I could address some of the merits of our claims, but really we haven't had a chance. We've found ourselves in this procedural quagmire. We want to get out of it. We want the claims construed according to this court's case law. Are you asking us to remand with instructions for the district court to construe the claims, or what? Your Honor, I don't think that I can ask for you to tell the district court to do anything. I believe the case... Do you think we should tell it, or is it something you can tell us not to do? The dismissal should be reversed, and we should have our opportunity to argue to the district court. Judge Friedman has a deeper point. For example, you might say, since the board committed the original errors here, what should really happen is it should go back from the federal circuit to the district court, and from the district court back to the board in a reopened board interference proceeding. Or, alternatively, you could say, send it back to Judge Peckman in Seattle and tell her to construe the claim and conduct a full-fledged 146 trial. Which do you want? I don't think it's really an issue of going back to the PTO at this point, because you have filed a 146. I would agree with Judge Peckman. It's really out of the PTO's jurisdiction. It's in the federal district court. I believe it is. Now, if you ask me, I'll take either one of those remedies. But I think the problem... You don't want it with the PTO, do you? If Spina controls, yes, because I'm convinced we'll win on one trial motion. But as the case currently stands, we did file this complaint, and I believe it's properly back in the district court. And maybe leave it to the district court to decide whether it will construe the claims in the first instance or remand to the board to construe the claims in the first instance if, under the statute, she has that authority. And that, I gather, she was wondering about that herself and what other questions she put to the board. And I don't really know the answer to that. Isn't there another problem? If she sent it back to the board, what would the ground rules be for conducting the claim construction exercise? Isn't there a risk the board would again say, we have to follow our reg, and our reg says we look at the one specification, not the one that Spina or Agilent says is the correct one? There is that risk. I would hope that the board would understand that they need to follow this court's case law, having been supposedly told so in Agilent. Wouldn't that be really a waste of time at that point, just do the entire hearing and... ...construe the claims in the light of our Agilent. If that were done, that would at least prevent them, hopefully prevent the board from doing what it might want to do. That would as well. There's a ricochet show up there. Unless the court has any further questions, I'll stop. Thank you. Mr. Chadwick. Were you surprised by Judge Heckman's ruling, or had you sought it and asked for it? Not surprised at all, Your Honor. They would ask for it. Not specifically. We didn't file a motion. You have to work non-specifically. Well, we discussed it at the pre-trial conference. And that's mentioned in the record, in the first book. When you say you discussed it, what is the it? Whether she should dismiss the complaint? Dismissal of the complaint on procedural grounds. That's this whole notion. I understand what you mean on procedural grounds. Sure. To dismiss a complaint on procedural grounds might be that they didn't file a proper number of copies, and they filed it one day later, or something like that. I don't understand dismissing it on procedural grounds. Let me explain. What I mean when I say on procedural grounds is on a review of the procedural decisions of the board. That is what was discussed at the pre-trial conference. You said the procedural decisions of the board. The board's decision on how it was going to deal with construing the claim, what it looked to, what specifications. Is that a procedural decision? Certainly. The rule itself, Rule 200B, in its title, says it is a procedure. And when we look to which specification we're going to go to, do we go to the Morgan specification or the Olin specification? That's a matter of procedure. Well, why is that a matter of procedure? It's a squarely matter of substantive patent law. Well, I would argue that substance is what does that procedure say, not where do we go to do it. And what the board was saying is, much like in a summary judgment motion, if you... You better backtrack and explain what you just said, because I didn't understand at all the first two sentences. Okay. It's an alias to a summary judgment motion, where the court says to prevail in summary judgment, you have to put forward evidence. You can't just have a lawyer come in and make arguments and pretend like that's going to carry the day. Procedurally, there has to be evidence. And if you don't present evidence, you can't prevail. Yes, but there is no summary judgment motion here. This is a summary action by the court alone. Fair enough. I agree with that. There was no motion made. The point, though, is the issue was discussed from the get-go at the pre-trial conference. What issue? You have a lot of pronouns here, and at least one of them is confused. Okay. The pre-trial... And this is off the record, and to be fair to counsel, I have to say that. The only thing that is in the record is the reference in Chronic Sciences' brief to Judge Peckman about what happened at the pre-trial. And the discussion that took place there was Phillips wanted to have a planned construction hearing added into the pre-trial order. That was the motion that was pending. Cardiac Sciences' position to Judge Peckman was, this is a big waste of time because you can review the procedural record of the board and dismiss the case in its entirety. That is the issue that was discussed. It's referred to in the responsive... I don't understand what you mean when you say, well, you suggested to Judge Peckman, Judge, you can review the procedural record of the board. I don't understand what you mean, procedural record of the board. The board decided the interference, as I understand it. That's not a procedural record. That's an interference record with a final outcome. Yes, but the decisions that the board made were made on a procedural basis. Sometimes they apply the rules, and then the courts apply... You had two board decisions. You had the first board decision ruling on the five motions. And then you had a second opinion, equally lengthy, ruling on priority. And I take it that the complaint challenged both of those. It certainly did. Priority isn't a matter of procedure, right? That's a matter of core patent law. Yeah, that's correct, Your Honor. If there are no procedural rules that come into play at the board, for example, you miss a deadline, you don't get a brief file, that's procedural. Do you agree that priority is not procedural? Could you restate the question? A holding on priority is not a procedural ruling. It depends on the basis of the ruling by the board, Your Honor. In this instance, the ruling was in response to an order to show cause, to fill a 70-month gap of due diligence. Phillips' response to that order was to not do it. And the board said, you didn't even do what we asked you to do. That's a procedural decision. If you don't follow what we ask you to do, we'll throw you out. I'm curious about something. Is the reason that there's all this argument about whether or not it was procedural, the fact that if it's procedural, it's reviewed for abuse of discretion, whereas if it's substance, it's reviewed on some other basis? That's right. That's the whole issue. That's the issue. And it's cardiac science's position, and it was Judge Peckman's position, that the rulings were all procedurally based. And she ruled on them and said the board did not commit any abuse of discretion. That's how we're here. All the rulings were procedural, including the ruling on priority? That is the position cardiac science would have taken. But the issue... It was one to review the board's decision on priorities, right? There may be preliminary procedural rulings, but they open the ruling under the statute. When the board decides a question of priority, when you interfere, it's your choice. You can come here, or you can go with the district court. And they elected to go with the district court. And that's what was before the district court, wasn't it? Yeah. And you say the district court said, well, that ruling on priority was all procedural. No. What I'm saying... Well, I do agree that the decision the board made on priority was procedural. But the issue that was brought to Judge Peckman was, let's discuss all of these issues. And we did that. Cardiac science submitted their brief, discussed all of the issues. Phillips responded on only four of them. And the court took that to be, these are the issues that are in dispute. That's why she kept asking, is there anything else? And the answer was, no. Your determination on this will carry through everything, Your Honor. That's why she didn't rule on priority. That's why she didn't rule on Motion 2. She kept asking Phillips, is there anything else I need to address? If we look at the questions that she gave to them prior to the hearing, that's what she was asking. That's what she was looking for. Wasn't validity in play? I thought the whole point from the Phillips perspective was, we want a claim construction because we have high confidence that under proper claim construction, we'll be able to prove invalidity. That is what they said. In fact, that's what they said consistently through their case. We want claim construction and that will solve all of the ills of what the Board did. But how do you say they were not entitled to have claims construed? They weren't entitled to have claims construed. And this was directly to Motion 4. And I'd like you to answer my question without using the word procedural. Okay. The issue of claim construction came up in Motion 4. The Board's Rule 200B said, look in the Olin Specification. Phillips refused to do that. The Board then said, then we don't have to construe the claims and did not do so and dismissed the motion. That's why. But that's contrary to SPINA. It is contrary to SPINA. It's also contrary to our most recent case in Highland. It's contrary to Agulent also. It is, John. And I think an important point needs to be made. If it's contrary to Agulent, and assuming review is abuse of discretion, why wasn't that an abuse of discretion? Because this all goes back to the holding in Roe v. Dror. That case is the one that comments on what happened in SPINA. And it says, the PTO can't go ahead and set aside judicial precedent. But that's not what they did. That's what Dror says. That's not what the PTO did. Agulent read Dror to say just the opposite. So Dror went on and said, look, the PTO had a good reason to do what it did. Do you agree that now, as of today, that Agulent controls on that question? No. I think Agulent was wrong when they decided. But they may be wrong when they decided from your point of view, but we're bound by it. You are, as a panel? Well, what I'm getting at is this. I think Dror, we really need to look at Dror. Because Dror is what Agulent relied on. And in Dror,  changing regulations because Congress changed the law. When Congress changed the law, the PTO had the right to promulgate those rules. It wasn't flouting judicial precedent. SPINA no longer applies because the rules have changed. That's the... You contend that the PTO has authority by rulemaking to overturn one of our decisions? I do. I do. You define that authority in the PTO? The Supreme Court. In what case? What case says that an administrative agency by regulation may overrule a decision of a reviewing court? National Cable v. Brand X 545 U.S. 967 at 982-983. What that case stands for is a proposition. And what that case talks about is Chevron deference. And if we look to the Kubota case that this court decided in 93, that's exactly what they did. On very similar circumstances to this case. Kubota involved a change of the prior judicial precedent about the burden of proof on a right of priority and an interference. There was no question that the new rules changed judicial precedent. But what the Federal Circuit did in that case in 1992-93 was look at the rules from Chevron the Chevron point of view. And they said, look, the court has the right to do this. Congress changed the law. We're going to look at it and give them deference. And there was no matter... Where did Congress change the law? I can't follow your sentence. In 1984 Congress changed the Patent Act to merge the two boards in interferences. So if we look to... What does that have to do with overruling judicial decisions? By their rules. Say that again? Why do we care that the two boards were merged in 1984? Or whatever it was. The question we're asking you about is what's the basis of the authority of the patent board to overrule the precedence of its review in court? The Federal Circuit. Chevron and the Brand X case. Look, Congress gave the administrative basis... Let's do it one piece at a time. You say Chevron. But Chevron involves agencies with substantive rulemaking authority. Congress doesn't have substantive rulemaking authority. So it's not clear that Chevron supports your position here if that position is that the PTO can overrule any Federal Circuit case it doesn't like by issuing a regulation that says the opposite. Brand X, which takes Chevron one step further, says if there's an interpretation of the statute and there is gap-filling going on then the judicial precedent is not binding. Who's the agency? The Patent and Trademark Office. It is the FCC. Yeah, because the FCC, like the EPA, has substantive rulemaking authority. The PTO lacks substantive rulemaking authority. I don't think any of the cases involving agencies that have substantive authority have any relevance to this case. But these rules aren't substantive, Your Honor. The change in the law fundamentally changed interference practice and it allowed the patentability issues to come up, which is exactly what 633A is addressing. And that's exactly what the Kubota case said. If we're going to follow the Agilent line of cases, Kubota is no longer good law. Kubota did exactly what Agilent said shouldn't be done. Under your theory as to the relative authority of the Patent Office and this Court to decide legal issues, would you take the position that the Board of Appeals has authority in one of its administrative decisions to overturn a decision of this Court that it doesn't agree with? I think it depends on what the issue is, Your Honor. There might be cases where the Board, which is a subordinate agency of the Patent Office, has authority to overturn, in effect, one of our decisions because it disagrees with it. It did that very thing in Kubota and was affirmed by this Court. So, yes. You don't put it this way, but your position seems to me to be that in light of Kubota, Agilent is a null. That Agilent conflicts polling against polling with Kubota and therefore, because Kubota came first in time, that Agilent is meaningless, not a precedent that stands for nothing. I agree, Your Honor. There are certainly odds with one another. Agreed. Well, I think we've got your position clearly in mind and we can go back and review the cases further. So, we'll hear three minutes of rebuttal from Mr. James and then we'll just take the case under review. Your Honor, I have nothing else unless the Court accepts it. All right. The appeal is submitted. All rise.